IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **VARNARIO T. HARRIS,** | :<br>:<br>: |
| Plaintiff, | :<br>: |
| VS. | : CIVIL ACTION FILE<br>: NO. 7:03-CV-33 (HL) |
| **GEORGIA DEPARTMENT OF CORRECTIONS, JIM WETHERINGTON, STEVE LEWIS, KEVIN ROBERTS, THOMAS GONZALES, and Officer RIVERA,** | :<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

## RECOMMENDATION

This is a § 1983 action maintained by a State of Georgia prisoner who, at the time of the circumstances giving rise to this lawsuit, was an inmate at Valdosta State Prison. Presently pending herein is the Motion for Summary Judgment brought by defendants Wetherington, Lewis, Roberts, Gonzales and Rivera (docs. 48 - 50). Plaintiff has been given the required notice of the filing of the motion and been advised of his right to file a response in opposition to the granting of the motion (doc. 53).[1]

The parties agree that on April 8, 2001, apparently due to an overcrowding situation in the

---

[1] The undersigned earlier recommended that the Georgia Department of Corrections be dismissed (doc. 8) as a non-suable entity, which was adopted and made the order of the court (doc. 9). Additionally, the undersigned earlier recommended that the Motion to Dismiss filed by defendant Jim Wetherington, the former Commissioner of the Georgia Department of Corrections, be granted in part to the extent that the plaintiff's claims against him sounded in *res judicata* (doc. 26). That recommendation was likewise adopted by the court (doc. 28). Thus, the only remaining claim against defendant Wetherington, goes to his alleged failure to do anything to correct the situation, or to correct the harm suffered by plaintiff when he allegedly became aware of the situation in June of 2001.

administrative segregation portion of Valdosta State Prison, defendant Rivera "double bunked" the plaintiff with another inmate, John Thorne.  Although established policy clearly called for defendant Rivera to handcuff the inmate already occupying the cell prior to opening the door he failed to do so on this occasion (Exhibit E, plaintiff's interrogatories to deft. Lewis, number 10, and deft. Lewis' response thereto; Exhibit H, plaintiff's interrogatories to deft Rivera, number 9, and deft. Rivera's response thereto).  Within seconds of placing plaintiff into the cell with the other inmate and closing the door the other inmate began attacking plaintiff by stabbing him several times with a homemade weapon, often called a 'shank' in prison.  (Exhibit H, plaintiff's interrogatories to deft. Rivera numbered 20, 5, and 14, and deft. Rivera's responses thereto).  After the attack was ended with the intervention of defendant Rivera, another inmate and several other officers, medical assistance was called for plaintiff and he was transported to the prison infirmary for treatment.

Plaintiff alleges generally that his constitutional rights were violated when he was 'double bunked' in violation of prison policy by not having the other inmate handcuffed prior to the opening of the cell door.  Further, plaintiff alleges that his constitutional rights were further violated when prison officials made the decision to place him into a cell with a white inmate who they knew would attack any black inmate placed in the cell with him.  Finally, plaintiff complains generally that the medical treatment and attention he received subsequent to the attack was inadequate and therefore a further violation of his constitutional rights.

*Summary Judgment Standard*

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Welch v. Celotex

Corp., 951 F.2d 1235 (11th Cir. 1992) (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio corp., 475 U.S. 574 (1986)).  However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Deliberate Indifference Claims*

Plaintiff's complaint and response in opposition to defendants' motion for summary judgment are replete with his allegations that prison officials knew of the serious likelihood of serious injury to any black inmate placed into a cell with white inmate John Thorne. Therefore, according to plaintiff, placing him in a cell with Thorne amounted to deliberate indifference to a known risk of serious injury or harm in violation of the Eighth Amendment.

The deliberate indifference standard has both an objective and a subjective component. "First, under the 'objective component', a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)(citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Secondly, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). "Thus, to survive summary judgment on his § 1983, Eighth Amendment Claims, [the plaintiff is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

***Evidence of a Known Dangerous Condition***

With regard to evidence presented by defendants in support of their motion, defendants Rivera, Gonzales, Roberts and Lewis have not submitted affidavits addressing their knowledge

4

or lack thereof of the danger Inmate Thorne posed to black inmates in general or to plaintiff personally at the time the decision was made to 'double bunk' plaintiff with Inmate Thorne. The defendants have however submitted copies of plaintiff's first interrogatories to each of the above named defendants and their answers thereto which are verified and given under oath and are therefore considered as evidence. Review of this evidence reveals the following[2]:

***a. Defendant Rivera*** - **Exhibit H** (this defendant placed plaintiff in the cell with inmate Thorne)

> No. 6 - Was you aware of the fact that the inmate inside of K-Building Lockdown Unit Cell Number thirty-seven didn't was to be housed with a black cell mate on 4-08-01 at Valdosta State Prison in Valdosta, Georgia 31603?
>
> Response: No.
>
> No. 21 - How many black inmates were housed together in K-Building Lockdown Unit with Inmate John Wayne Thorne prior to incident report number 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 occurred on 4-08-01 at Valdosta State Prison in Valdosta, Georgia 31603?
>
> Response: Defendant Rivera has no knowledge of the number of African-American inmates housed in cells with Inmate Thorne prior to the indicent occurring on April 8, 2001.

**b. *Defendant Gonzales*** - **Exhibit G** (Captain of Security - *see* ans. to interrogatory no. 4)

> No. 7 - Were you aware of the fact that Inmate John Wayne Thorne assaulted (3) black inmates at Valdosta State Prison in Valdosta, Georgia 31603?
>
> Response: No.
>
> No. 15 - How many assaults occurred at Valdosta State Prison in Valdosta, Georgia 31603 involving Inmate John Wayne Thorne, while you were employed?
>
> Response: Defendant Gonzales does not know how may [sic] assaults occurred at Valdosta State Prison involvingIinmate John Wayne Thorne.

---

[2] Plaintiff's written interrogatories to these defendants are reproduced above as propounded to avoid the constant use of [sic].

<u>No. 17</u> - Were the incidents similar of Varnario T. Harris and Willie James Baker that occurred inside of K-Building Lockdown Unit Cell numbers eighteen and thirty-seven both involving Inmate John Wayne Thorne, while housed at Valdosta State Prison in Valdosta, Georgia?

<u>Response:</u> Defendant Gonzales does not know wether there were any similarities between any incidents involving the plaintiff and a Willie James Baker and Inmate John Wayne Thorne.

<u>No. 22</u> - Were you aware of the fact that Inmate John Wayne Thorne did not want to be housed with a black roommate while house in K-Building Lockdown Units in Valdosta State Prison in Valdosta, Georgia 31603?

<u>Response:</u> No.

c.  **Defendant Roberts** - **Exhibit F** (Deputy Warden of Security - *see* ans. to interrogatory no. 4)

<u>No. 9</u> - Were you aware of the fact that Inmate John Thorne did not want to be housed with blacks while in K-Building Lockdown Units at Valdosta State Prison in Valdosta, Georgia 31603?

<u>Response:</u> Defendant Roberts does not recall whether he was aware that Inmate Thorne had any preference for having a roommate of a particular race.

<u>No. 12</u> - Did Inmate John Wayne Thorne acknowledge that he knew inmate Varnario T. Harris prior to 4-08-01 at Valdosta State Prison in Valdosta, Georgia 31603?

<u>Response:</u> Defendant Roberts states that Inmate Thorne stated that he did not know Inmate Harris.

<u>No. 16</u> - What are the policies and procedures when double celling inmates in K-Building Lockdown Units at Valdosta State Prison in Valdosta, Georgia 31603?

<u>Response:</u> Defendant Roberts states that inmates are not housed with other inmates with whom such inmates have had known problems in the past. Defendant further states that not only does it appear that Inmate Harris and Inmate Thorne had no history of prior altercations, such inmates did not appear to have know [sic] each other prior to the incident occurring on April 8, 2001.

<u>No. 18</u> - How many assaults occurred at Valdosta State Prison in Valdosta, Georgia 31603 involving Inmate John Wayne Thorne while you were employed?

<u>Response:</u>  Defendant Roberts is not aware of how many incidents may have occurred at Valdosta State Prison involving Inmate John Wayne Thorne.


<u>No. 19</u> - Were the incidents similar of Varnario T. Harris and Willie James Baker that occurred inside of K-Building Lockdown Unit Cell Numbers Eighteen and Thirty Seven both involving Inmate John Wayne Thorne while housed at Valdosta State Prison in Valdosta, Georgia 31603?

<u>Response:</u> Defendant Roberts does not recall whether there were any similarities between any such incidents.  Defendant Roberts further states that information showing such similarities would be found in Inmate Thorne's file.


<u>No. 22</u> - Were you aware of the fact that Inmate John Thorne has assaulted inmates Michael Brooks and Willie James Baker while you were employed at Valdosta State Prison in Valdosta, Georgia 31603?

<u>Response:</u> Defendant Roberts states that he does not recall whether he was aware of any prior incidents involving Inmate Thorne and Inmates Brooks and Baker prior to April 8, 2001.


d.   **Defendant Lewis** - **Exhibit E** (Warden, see ans. to interrogatory no. 1)


<u>No. 11</u> - How many assault incidents occurred at Valdosta State Prison in Valdosta, Georgia 31603 between January 2001 and April 2001 involving Inmate John Wayne Thorne?

<u>Response:</u> Defendant Lewis has been retired from the Department of Corrections since September 1, 2004, and therefore no longer has access to the information requested.  In addition, defendant Lewis has no personal recollection of the number of assault incidents involving Inmate John Wayne Thorne.


<u>No. 12</u> - How many assault incidents occurred at Valdosta State Prison Valdosta, Georgia 31603 in April 2001 in K-Building Lockdown Units involving Inmate John Wayne Thorne?

<u>Response:</u> See defendant's response to Interrogatory No. 11 above.

7

*e. In Camera Inspection of Inmate John Wayne Thorne's Disciplinary Records - Exhibit D*

During discovery plaintiff attempted to obtain a copy of Inmate Thorne's disciplinary records from the Georgia Department of Corrections by means of subpoena (doc. 39). Defendants filed a motion to quash the subpoena for several different reasons (doc. 41). The undersigned granted the motion to quash, while at the same time ordering the production of Inmate Thorne's disciplinary records from the date of his entry into the Georgia Department of Corrections through April 8, 2001, the date of his attack upon plaintiff, for an *in camera* inspection by the undersigned (doc. 45).

On or about July 13, 2006, defendants presented to the undersigned, "the entire permanent disciplinary file of Inmate John Wayne Thorne from his initial incarceration on February 12, 1998 up through and including April 8, 2001. In order to certify that this record is complete and accurate, the following is a list of a disciplinary reports contained in the permanent disciplinary file of Inmate John Thorne, for the date of his initial incarceration on February 12, 1998 up through and including April 8, 2001, with a copy of such report attached." (Exh. D., Aff. of Sanche M. Jackson, ¶ 4). Accompanying this affidavit are copies of thirty nine (39) disciplinary reports received by Inmate Thorne during the thirty nine (39) month period between February 1998 and April 2001. It goes without saying that his disciplinary history shows him to be something less than an exemplary inmate. Inmate Thorne's activities resulting in his receiving the above referenced disciplinary reports are wide ranging and varied and well document his obvious problem with those in authority over him. However, not a single disciplinary report with the exception of the one he received for his attack on the plaintiff involves violence or even a threat of violence towards another inmate. Likewise, no disciplinary report deals with Inmate

Thorne having trouble getting along with inmates of a different race. There are perhaps two disciplinary reports in which Thorne was charged with 'Intentionally causing injury to other inmate or self', both of which involve injury to Thorne sustained while he was destroying prison property. Thus, the sworn answers to the plaintiff's interrogatories and the in camera inspection of Inmate Thorne's disciplinary file show that the defendants did not have prior knowledge of violent propensities of Inmate Thorne towards plaintiff individually or because he was of a different race.

The undersigned cannot consider the written statements taken from other inmates and staff during the investigation of Thorne's attack upon plaintiff as evidence in this summary judgment analysis as they are not sworn statements (Exhibits A through A-5, and B through B-6). Title 28 United States Code Section 1746 is titled, "Unsworn declarations under penalty of perjury" and states in pertinent part:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (Date)
>                                        (Signature)"

The statements taken during the investigation into this matter have printed at the top of the form, " I, _____, want to make the following statement under oath:"

Near the end of the statement form above the signature line for the individual making the statement the following appears:

> "I, _____, have read or have had read to me this statement which begins on page 1 and ends on page ___. I fully understand the conditions of the entire statement made by me. The statement is true. I have initialed all corrections and have initialed the bottom of each page containing the statement. I have made this statement freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence or unlawful inducement.
>
> _____
> (Signature of person making statement)
>
> "Subscribed and sworn to before me, a person authorized by law to administer oaths this ____ day of _____, ___.
>
> _____
> (Signature of person administering oath)

None of the witness statements contained in exhibits A and B and their sub parts are subscribed and sworn to. Likewise, the statements are not given under penalty of perjury. Thus, for purposes of summary judgment analysis these statements can not be considered as evidence capable of creating a genuine issue of material fact so as to preclude summary judgment.

The only evidence before the court is that defendants had no prior knowledge of the danger to the plaintiff resulting from double bunking him with Inmate Horne. "A prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). "Thus, to survive summary judgment on his § 1983, Eighth Amendment Claims, [the plaintiff is]

required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

Here, the plaintiff has failed to produce evidence of a substantial risk of serious harm. There being no evidence of substantial risk of serious harm, the defendants could not be deliberately indifferent to the risk. Under the holding in Farmer v,. Brennan, 114 S. Ct. 1970 (1994), these defendants are entitled summary judgment on the deliberate indifference claim. Inmate Horne's extensive disciplinary history does not benefit the plaintiff. "[B]efore defendants' awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature." Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). Nor is plaintiff's caise aided by the apparent negligent conduct of defendant Rivera in failing to handcuff Inmate Thorne prior to placing plaintiff in the cell with him. There being no known risk of substantial danger, simple negligence cannot rise to the level of deliberate indifference such that the Constitution would be offended.

***Plaintiff's Claim that Defendant Rivera did Nothing to Stop the Attack.***

Plaintiff seems to also allege that once the attack commenced, defendant Rivera did nothing to intervene on Plaintiff's behalf. He further alleges that the attack began before the cell door was closed. The evidence offered by defendant Rivera in his sworn answers to plaintiff's first interrogatories shows this not to be the case. As earlier stated defendant Rivera's answers to plaintiff's first interrogatories have been designated as Exhibit H to defendants' motion.

> No. 20 - Describe how was it that you saw inmate Varnario T. Harris inside of K-Building Lockdown Unit on 4-08-01 cell number thirty-seven covering himself from the attack at Valdosta State Prison in Valdsota Georgia 31603?

Response: Defendant Rivera states that after he placed Defendant [sic] Harris in cell 37 and closed the door, he turned to walk away. Defendant states that he then heard a loud noise coming from cell 37, and turned back to the cell and observed Inmate Harris covering himself up with both hands above his head.

No. 5 - How many time did you call for K-Building Lockdown Unit cell number thirty-seven to be opened, upon escorting the Inmate Varnario T. Harris to be occupied with the other inmate inside of #37 on 4-08-01 at Valdosta State Prison in Valdosta, Georgia 31603?

Response: Defendant Rivera announced a Code One (fight) over his radio. The control room officer repeated the Code One, and opened the door immediately. The control room officer then called a Code Three (Officer needs Assistance) over the radio, and other staff members arrived in response.

Again, in his unverified response to defendants' motion plaintiff alleges that the attack commenced prior to the closing of the cell door. The only evidence contained in the record before the undersigned however is the sworn testimony of defendant Rivera to the effect that the door was closed and had to be opened before he could render assistance. Plaintiff has presented no evidence, as he must, to create a genuine material factual issue as to this claim.

*Plaintiff's Claims of Deliberate Indifference to a Serious Medical Need*

In his unverified thirty page complaint plaintiff complains generally that he did not receive adequate medical treatment for injuries received during the attack. Plaintiff fails completely however to address in what particulars the medical treatment was inadequate, or what treatment he felt he should have received but did not. Fox example, on page eleven he alleges that defendant Roberts denied him adequate medical attention and the "right to be taken to the hospital." Significantly, plaintiff names no one from the prison medical department as a defendant responsible for his allegedly inadequate medical treatment.

In response to these complaints against defendant Roberts defendants have submitted the

12

affidavit of Gail Knowles who was and is the Administrative Assistant at Valdosta State Prison. (Exhibit J, ¶ 2). In that capacity she has first hand knowledge of the job descriptions of the employees at the prison. (Exhibit J, ¶ 2). In paragraph 3, affiant states, "[o]n April 8, 2001, Kevin Roberts was the Deputy Warden of Security at VSP. The Deputy Warden of Security has no control over medical treatment of an inmate. The Deputy Warden of Security further had no authority to make any medical care decisions regarding an inmate. All medical care decisions are under the control of Valdosta State Prison's Medical Administrator, the medical doctors, nurse practitioner, and staff nurses. Not even the Warden has control over medical care decisions."

Plaintiff's eleven page unverified response to the defendants' motion fails to address his claims of inadequate medical attention. Defendants have submitted plaintiff's medical records regarding the treatment he received as a result of the attack (Exhibit I and I-1). Examination of these records is not necessary however as defendants have submitted unrefuted evidence that defendant Roberts has no responsibility for decisions regarding medical treatment. Plaintiff elected not to name medical providers as defendants in this case. Finally, plaintiff has presented only unsubstantiated general allegations, not evidence, that he received inadequate medical care for his injuries suffered. Defendant Roberts has met his burden of showing that he has no responsibility for medical decisions pertaining to plaintiff. Plaintiff has presented no evidence creating a genuine issue of material fact on this claim. Defendant is therefore entitled to summary judgment.

***Potential Official Capacity Claims.***

In his complaint plaintiff states that each defendant is being sued in his personal and

professional capacity. In the event that plaintiff is seeking to sue these defendants in their official capacities his claims are without merit. A suit brought against the defendant prison officials in their official capacities is in reality a suit against the state and as such is not cognizable under § 1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58 (1989).

*Potential Claims Remaining Against Defendant Wetherington*

In an earlier recommendation it was found that to the extent plaintiff was seeking to hold defendant Wetherington responsible for the actions of the other defendants under the theory of *respondeat superior* he should be dismissed; however plaintiff's claims that this defendant did nothing to correct the harm suffered by the plaintiff after becoming aware of same was allowed to proceed (doc. 26). That recommendation was adopted by the court (doc. 28). It now having been found as set out above that plaintiff suffered no violation of his constitutional rights by the other named defendants at Valdosta State Prison when he was attacked on April 8, 2001, the alleged inaction of defendant Wetherington to do anything to correct the situation after learning of the attack *a fortiori* cannot amount to a violation of plaintiff's constitutional rights.

In response to defendants' motion plaintiff has failed completely to submit any evidence showing or even inferring the existence of a genuine issue of material fact. Defendants have supported their motion with evidence. Summary judgment is therefore appropriate. For all of the reasons set out herein above it is the **RECOMMENDATION** of the undersigned that defendants' motion for summary judgment be **GRANTED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED,** this 8th day of September 2006.

*/s/ Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE